## M. F. Marx Manufacturing Company v. Beha Laundry Company.

(Decided May 1, 1928.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Sales.—Where buyer, within two weeks of installation of oil burner, offered to rescind contract by notifying seller of particulars in which it claimed burner failed to comply with contract and tendered it back to seller, buyer's conduct was effective to relieve it of obligation under contract, provided contract was violated, irrespective of whether the sale was executory or executed; warranty being always collateral to an executed contract of sale.

2. Sales.—Appearance of fire cracks in first girth seam of boiler, necessitating closing of laundry plant for repairs, held not violation of seller's contract guaranteeing that oil-burning equipment would operate in satisfactory manner for purpose for which it was installed and deliver maximum heat, where cracks were due, not to use of oil burner, but to removal of protecting arch of brickwork of boiler which could be supplied at insignificant cost.

3. Sales.—Fact that oil used in oil burner sold for operation of boiler cost more than coal as a fuel held not to relieve buyer from liability under seller's contract guaranteeing that oil-burning equipment would operate with maximum amount of heat and minimum amount of fuel and power, since contract merely guaranteed that

oil burner would produce more heat from amount of fuel used than other oil burners.

GROVER G. SALES for appellant.

WINFIELD L. WALTERS and GILBER BURNETT for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

By a writing dated April 24, 1924, which the parties signed, appellant, M. F. Marx Manufacturing Company, agreed "to sell and deliver and install" a Ray rotary fuel oil burner, with tank and certain other machinery and fixtures with which to fire the boiler, which was owned by, and was a part of, the plant of appellee, Beha Laundry Company. The oil burner and other machinery and equipment were installed by appellant in August, 1924, and, appellee having failed to pay the agreed purchase price, this action was instituted to recover it. Appellee pleaded the defenses hereinafter indicated. The action was in equity because appellant sought to enforce a lien on the equipment sold and a mechanic's and materialman's lien on the property improved by its installation. The trial below resulted in a judgment dismissing appellant's petition and in favor of appellee for $450 on its counterclaim. Hence the appeal.

A great deal of the discussion of this case as presented by briefs of opposing counsel centers around the question whether this was an executory or executed contract of sale. Much of the brief for appellee is devoted to the proposition that it was an executory contract, the conditions of which were such that the title would not pass, and appellee would not become obligated for the purchase price until by trial it had been ascertained that the oil burner and equipment was satisfactory for the purpose for which it was installed. On the other hand, it is contended for appellant that the sale was executed, and that the oil burner has been shown to have complied with the terms of the warranty. It would seem to make but little difference whether the contract be regarded as executory or executed. If executory, and it was contemplated by the parties that the oil burner be tried and proved to be satisfactory before the title should pass, or appellee should become obligated for the purchase price, and if, when tried, it proved unsatisfactory, and was not received, it cannot be said that there was a breach of

warranty. A warranty is always collateral to an executed contract of sale. It would be in that case rather a breach of the terms of the contract of sale. If the seller does not tender the article contemplated by the contract of sale, the buyer may decline to receive the article tendered, and, of course, is not bound for the contract price.

Whether this be an instance in which the article tendered was not such as was contemplated by the contract of sale, or whether it be an instance in which the article was sold and delivered, and there has been a breach of the warranty, is immaterial under the facts of this case. If appellee's contentions with reference to the oil burner and other equipment—the subject of the sale herein— are correct, it is relieved of the obligation to pay for same whether the sale be executed or executory, because within two weeks after the installation thereof it offered to rescind the contract by notifying appellant of the particulars in which it claimed the oil burner failed to comply with the contract of sale or with the warranty and tendered it back to appellant. If the sale was executory, what was done in this particular amounted to declining to receive the article tendered, which was not as contemplated by the contract of sale. If it was executed, then it amounted to a rescission of the contract of sale for breach of warranty. As said in Paducah Hosiery Mills v. Proctor & Schwartz, 210 Ky. 806, 276 S. W. 803:

> "If machinery is sold under a warranty and does not come up to the warranty, the vendee may, if he acts promptly, rescind the contract; but to exercise this right he must act in a reasonable time after learning of the defects in the machinery."

Numerous opinions of this court are cited to sustain the principles there declared.

The contract of sale which the parties signed contains this provision:

> "We further guarantee that the oil burning equipment herein referred to will operate in a satisfactory manner for the purpose for which it is installed and deliver the maximum amount of heat obtainable with this particular type of installation, with the minimum amount of fuel and power."

The "guaranty," it is to be observed, is twofold. The guaranty that the oil burner would deliver the maximum amount of heat obtainable with the minimum amount of

fuel and power, when compared with other oil-burning equipment, must have been fulfilled by the oil burner installed, because there is no attempt to show a failure in this particular. Appellee's right to reject the article tendered or to rescind the sale and to be relieved of paying for the oil burner is predicated wholly upon the contention that, when tried, it did not "operate in a satisfactory manner," for the purpose for which it was installed. It is insisted that the evidence discloses two particulars in which the oil burner proved materially unsatisfactory; that is, that the heat generated by its use was so intense that it burned and destroyed the boiler, and that the cost of operation was excessive.

The evidence establishes that, after approximately two weeks of use, fire cracks appeared in the first girth seam of the boiler, which were large enough to cause the boiler to leak, so that it became necessary to close down the plant for repairs. The testimony of the engineers and experts who testified for appellee herein attributed the appearance of the fire cracks, not to the use of the oil burner, but to the fact that, when it was installed, a protecting arch of brickwork, which previously, and while coal was being used as fuel, had protected the first girth seam, was removed. Their explanation of the appearance of the fire cracks was that the boiler plates of this boiler were one-half inch thick. Where they were lapped at the girth seam and riveted, there was a thickness of one inch of boiler plate, to which was added the thickness of the heads of the rivets. The outer surface of the boiler shell was thus so far removed from the water within the boiler that it overheated, and, because of the difference in the temperature of the outer and inner surfaces, and the consequent terrific strain thereon, the cracks were caused. They testified that with boilers of this thickness, to prevent fire cracks appearing, it is necessary to protect the first girth seam with brickwork. They testified that the same thing would have happened if this boiler had been fired with coal, unless the first girth seam was so protected. It is agreed by all the witnesses that restoring the brickwork to protect the first girth seam as indicated was a simple task, involving insignificant cost.

The evidence herein establishes without contradiction that the three fire cracks which appeared while the oil burner was being used were repaired at a cost of $52.76, and that the boiler now is as sound and as safe for use as before they appeared. The boiler being used

by appellee had been purchased from the United States
after being used at Camp Taylor.   While the evidence
does not so disclose, we feel that we may assume that it
was a new boiler when installed at Camp Taylor.   That
fire cracks sometimes occur, regardless of the type of
fuel being used, and regardless of whether the girth seam
is protected by brickwork, may reasonably be inferred
from the undisputed fact appearing herein that the same
thing had occurred with this boiler before appellee pur-
chased it.   Fire cracks had appeared while it was used
at Camp Taylor; and repairs had been made by the weld-
ing process.   It would seem unreasonable to condemn the
oil burner because fire cracks appeared while it was
being used when the same thing happened to the same
boiler when it had had much less use while being fired
with coal.   That is especially true in this case where the
witnesses for appellee attribute the trouble, not to the
use of the oil burner, but to lack of protecting brickwork
at the first girth seam, which could be supplied at insig-
nificant cost.

The only other particular in which appellee found
fault with the oil burner which was installed was in the
cost of its operation.   The complaint in this particular
is founded upon a comparison of the cost of operating
with oil as fuel and with coal as fuel, to the disadvantage
of the former, according to the evidence for appellee.
The difference in the cost of the two fuels is the founda-
tion upon which appellee's complaint is builded.   It is ad-
mitted that coal is the more expensive as a fuel from the
standpoint of cost of labor incident to its use, compared
with cost of labor incident to use of oil.   The contract
appears to be conclusive on this question.   Whether part
of the contract of sale or part of the warranty of the
thing sold, when the parties agreed that the oil burner
would be what appellee agreed to receive and pay for or
fulfilled the terms of the warranty when it delivered "the
maximum amount of heat obtainable with this particular
type of installation with the minimum amount of fuel,"
they circumscribed the field of inquiry and comparison.
What type of installation was the subject of this con-
tract?   It was the oil-burning type.   The contract clearly
was that the oil burner being installed would produce
more heat from the amount of fuel used than any oil
burner on the market.   Those are the terms of the con-
tract or warranty as to economy of operation.   Having
expressly contracted with reference thereto, the parties

are bound by the terms of the contract. As said in Paducah Hosiery Mills v. Proctor & Schwartz, 210 Ky. 806, 276 S. W. 803:

"It clearly appears that the vendor sold the machines well knowing the specific purpose for which they were intended, and it is earnestly insisted that this being so there is an implied warranty that the machines were reasonably adapted to that purpose. This is ordinarily the rule. Cumberland Grocery Co. v. Hardwood-Barley Mfg. Co., 184 Ky. 70 (211 S. W. 409). But in this case there was an express warranty as to what the machine would do. It was guaranteed to at least double the production of an operator over the quantity turned out by the same operator when boarding by the method of using wooden boards. The quantity of work that the machine would do being expressly guaranteed in writing, there was no implied warranty that it would do more and the vendor cannot maintain that it satisfied the contract if it did less. It was also expressly guaranteed that all the machinery, materials and supplies should be of good and suitable quality and that all work should be performed in a good and workmanlike manner. The parties having put their contract in writing the writing supersedes all the previous oral negotiations. The court should have excluded all evidence of oral representations to the effect that the machines would produce more than specified in the written contract. And neither of the parties can maintain that the machines were not reasonably suited for the purpose intended if they produced as specified in the written contract, for by the written contract the parties fixed the standard by which it should be determined whether the machines were reasonably adapted to the purpose intended."

Appellant pleaded that the contract was that the oil burner would cost less to operate than coal-burning equipment, and that this was left out of the contract by fraud or mistake. There was no prayer for reformation of the contract, and no showing authorizing it from the evidence introduced. Hence the evidence tending to establish that oil as fuel was more expensive than coal as fuel was beside the point.

For the reasons indicated, this court is constrained to the view that the chancellor erred in concluding that

appellant failed to manifest the right to the relief sought in the petition, and the judgment herein is reversed, and cause remanded for judgment in conformity herewith.